UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRETT M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-5402 RBL

ORDER AFFIRMING DENIAL OF BENEFITS

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Brett[1] M.'s Complaint (Dkt. 1) for review of the Commissioner of Social Security's denial of his application for disability insurance benefits. This is the third time this matter has been before the Court. *See* AR at 439-44, 1323-33.

Plaintiff has severe impairments of degenerative joint disease, degenerative disc disease, shoulder abnormality, status post spinal trauma, and shoulder strain. *Id.* at 1204. Plaintiff also alleged mental impairments, but the Administrative Law Judge ("ALJ") found them not severe. *See id.* at 1204-06.

Plaintiff applied for disability benefits on March 31, 2008, alleging a disability onset date

---

[1] Plaintiff's name is spelled "Bret" in the Complaint, but the Administrative Record indicates that Plaintiff spells his name as "Brett." *See* Admin. Record ("AR") (Dkt. 7) at 214. The Court uses Plaintiff's spelling of his name.

ORDER AFFIRMING DENIAL OF BENEFITS
- 1

of October 9, 2001 due to a workplace accident. *See id.* at 91, 176. His date last insured was December 31, 2003, which meant he had to establish disability, as defined in the Social Security Act, on or before that date. *See id.* at 1202.

Plaintiff's application was denied on initial review and on reconsideration. *Id.* at 91-92. At Plaintiff's request, ALJ Gary Suttles held a hearing on Plaintiff's claims. *Id.* at 31-90. On April 20, 2010, ALJ Suttles issued a decision denying Plaintiff benefits. *Id.* at 8-27. The Appeals Council denied review. *Id.* at 1-3. Plaintiff then sought review before this Court. *See id.* at 439-44.

On November 10, 2011, the Court entered an order remanding the case pursuant to the parties' stipulation. *Id.* at 440-42.

On remand, ALJ Robert Kingsley held a hearing and again denied Plaintiff's claims for benefits. *Id.* at 365-86, 394-438. On July 18, 2014, the Appeals Council denied review. *Id.* at 348-51. Plaintiff again sought the Court's review. *See id.* at 1323-33.

On August 5, 2015, the Magistrate Judge Mary Alice Theiler entered an order remanding the case. AR at 1328-33. The Commissioner conceded that the ALJ had erred, but asked the Court to remand the case to the Appeals Council. *See id.* at 1331. Magistrate Judge Theiler rejected the Commissioner's request, and remanded the matter for further administrative proceedings. *Id.* at 1333.

On remand, ALJ Kelly Wilson held a hearing on February 12, 2016. *Id.* at 1234-54. ALJ David Johnson, after taking over the case, held another hearing on November 28, 2017. *Id.* at 1255-75. ALJ Johnson issued a decision again denying Plaintiff's claim for benefits on January 18, 2018. *Id.* at 1201-18. The Appeals Council did not assume jurisdiction, and Plaintiff did not file written exceptions to the ALJ's decision within 60 days of that decision. *See* Compl. ¶ 12.

The ALJ's decision thus became the Commissioner's final decision. *See* 20 C.F.R. § 404.984(d). Plaintiff subsequently filed the present Complaint.

Plaintiff argues that the ALJ erred in (a) rejecting Plaintiff's testimony, (b) evaluating the medical evidence, (c) evaluating the lay witness testimony, and (d) assessing Plaintiff's residual functional capacity ("RFC") and basing his findings at step five of the disability evaluation process on that RFC. *See* Pl. Op. Br. (Dkt. 11) at 1. Plaintiff argues that the Court should remand this matter for an award of benefits. *Id.*

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**A.  The ALJ Did Not Harmfully Err in Rejecting Plaintiff's Testimony**

Plaintiff contends that the ALJ erred in rejecting his subjective symptom testimony. Pl. Op. Br. at 10-15. The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented

ORDER AFFIRMING DENIAL OF BENEFITS
- 3

objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged. AR at 1207.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that "the weight that can be given to the claimant's symptom reports is undermined" for several reasons. AR at 1207. First, the ALJ found affirmative evidence of malingering, as Plaintiff exaggerated his symptoms. *Id.* at 1211. Second, the ALJ found that the medical evidence was inconsistent with the severity of symptoms Plaintiff alleged. *Id.* at 1210. Third, the ALJ found that Plaintiff's symptoms were improved with treatment. *Id.* Fourth, the ALJ found that Plaintiff's testimony was undermined by his lack of participation and follow-through with treatment. *Id.* at 1210-11. Fifth, the ALJ found that Plaintiff's daily activities contradicted his symptom testimony regarding the degree of his limitations. *Id.* Taken as a

whole, the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom testimony, and did not harmfully err.

1. <u>The ALJ Did Not Err in Rejecting Plaintiff's Testimony Because He Exaggerated His Symptoms</u>

The ALJ determined that the evidence suggested Plaintiff was exaggerating his symptoms and limitations. AR at 1211. Affirmative evidence of malingering—standing alone—can support an ALJ's rejection of Plaintiff's testimony. *See Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2008) (The existence of "affirmative evidence suggesting malingering vitiates the clear and convincing standard of review") (internal quotation marks omitted).

Plaintiff has not shown error here. The ALJ noted that Clyde Carpenter, M.D., one of Plaintiff's treating doctors, found Plaintiff had two of five Waddell signs, an indicator of exaggeration. AR at 590. Robert Campbell, M.D., an examining doctor, found that Plaintiff had one positive Waddell sign, and give-way weakness rather than true weakness with his upper extremities. *Id.* at 271. The ALJ reasonably interpreted these findings as affirmative evidence of malingering and did not err in rejecting Plaintiff's symptom testimony on this basis. *See Thomas*, 278 F.3d at 958-59.

2. <u>The ALJ Did Not Err in Determining That Plaintiff's Testimony was Inconsistent with the Medical Evidence</u>

The ALJ determined that the medical evidence was inconsistent with the severity of symptoms Plaintiff alleged. AR at 1210. In making this determination, the ALJ focused on the fact that Plaintiff needed to prove that he met the disability requirements by December 31, 2003, his date last insured. *See id.* at 1208-10.

The ALJ's reasoning here is insufficient on its own as a basis to reject Plaintiff's symptom testimony, but the ALJ did not err in discussing or interpreting this evidence. An ALJ

ORDER AFFIRMING DENIAL OF BENEFITS
- 5

may not reject a Plaintiff's subjective symptom testimony "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991), but may consider the lack of supporting medical evidence in weighing Plaintiff's allegations, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's rejection of claimant's testimony and noting that "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Here, the ALJ reasonably determined that there was a lack of objective medical evidence between the alleged onset date and Plaintiff's date last insured to support the severity of symptoms Plaintiff claimed. *See* AR at 1210. And the ALJ reasonably determined that some of the objective clinical findings were inconsistent with Plaintiff's allegations. *See id.* This analysis could not on its own support rejecting Plaintiff's testimony, but the ALJ was allowed to consider it, and Plaintiff has not shown that the ALJ erred in the analysis itself.

3. <u>The ALJ Erred in Rejecting Plaintiff's Testimony Based on His Alleged Improvement with Treatment</u>

The ALJ next reasoned that Plaintiff's symptoms had improved with treatment, undermining Plaintiff's testimony. *Id.* The ALJ's discussion on this point did not provide a clear and convincing reason to reject Plaintiff's testimony. Plaintiff improved with treatment in some areas, but continued to have limitations in others. *See id.* at 575-80, 611, 620, 624, 914-24. The ALJ's discussion was not convincing in demonstrating that Plaintiff's testimony should be rejected because he experienced some amount of improvement. *Cf. Garrison*, 759 F.3d at 1017 n.23 ("'There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . .'") (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)). The ALJ thus erred in rejecting Plaintiff's symptom testimony on this basis.

//

### 4. The ALJ Did Not Err in Rejecting Plaintiff's Testimony Based on Lack of Participation and Follow-Through with Treatment

The ALJ further rejected Plaintiff's symptom testimony because Plaintiff did not fully participate or follow through with recommended treatment. AR at 1210-11. This was a clear and convincing reason to reject Plaintiff's symptom testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (upholding ALJ's adverse credibility determination where the ALJ inferred that the plaintiff's symptoms were not as severe as alleged because he stopped taking an effective medication due to mild side effects and did not seek more aggressive treatment); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies.") (quoting *Fair*, 885 F.2d at 603). As the ALJ noted, Plaintiff's physical therapist reported that Plaintiff needed to increase his compliance and attendance with therapy. AR at 920, 1211. Plaintiff's chiropractor recommended three visits a week for three weeks, but Plaintiff did not follow through on this recommendation. *See id.* at 587, 1211.

Plaintiff argues that the ALJ could not rely on this reason to reject his testimony without first inquiring why Plaintiff did not obtain additional treatment. Pl. Op. Br. at 11-12. The ALJ does not need to investigate why Plaintiff failed to seek treatment when Plaintiff puts forth no excuse. *See Baricevic v. Berryhill*, 720 F. App'x 858, 859 (9th Cir. 2018). Plaintiff has thus failed to show that the ALJ erred in rejecting Plaintiff's testimony for failure to comply with recommended treatment.

### 5. The ALJ Did Not Err in Rejecting Plaintiff's Testimony Because It was Inconsistent with His Daily Activities

The ALJ last rejected Plaintiff's symptom testimony because it was inconsistent with his

daily activities. AR at 1211. An ALJ may discount a claimant's testimony if his daily activities "contradict [the claimant's] other testimony." *See Orn*, 495 F.3d at 639.

Plaintiff testified that he could not stand or sit for very long. AR at 66. Yet Plaintiff also testified that he walked a mile a day. *Id.* 65-66. Plaintiff testified that he helped mow his parents' four-acre property, using both a push mower and a sit-down mower. *Id.* at 69. The ALJ reasonably determined that these and other facts were inconsistent with the severity of symptoms Plaintiff alleged, and did not err in rejecting Plaintiff's testimony on this basis. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (upholding ALJ's rejection of plaintiff's symptom testimony where it was contradicted by her daily activities).

6. <u>Plaintiff Has Not Shown That the ALJ Committed Harmful Error in Rejecting Plaintiff's Symptom Testimony</u>

Although not all of the ALJ's reasons for rejecting Plaintiff's symptom testimony were clear and convincing, Plaintiff has failed to show harmful error. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). The ALJ included valid reasons that withstand scrutiny despite his inclusion of erroneous reasons, so those erroneous reasons were "'inconsequential to the ultimate disability determination,'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)), and therefore harmless.

**B.     The ALJ Did Not Harmfully Err in Evaluating the Medical Evidence**

Plaintiff contends that the ALJ erred in evaluating the medical evidence. Pl. Op. Br. at 3-9. Plaintiff argues that the ALJ erred in rejecting the opinions of Richard Johnson, M.D., Robert Campbell, M.D., and Katherine Brewer, M.D.; giving partial weight to the opinions of John Daniel, M.D.; giving great weight to the opinions of Robert Hoskins, M.D., Cynthia

ORDER AFFIRMING DENIAL OF BENEFITS
- 8

Collingwood, Ph.D., John Robinson, Ph.D., and Faren Akins, Ph.D.; and dismissing opinions from Leonard Albert, M.D., Ph.D., and Yoshihiro Yamamoto, M.D. with little discussion. *Id.* The Court disagrees.

### 1. The ALJ Did Not Harmfully Err in Rejecting Dr. Johnson's Opinions

Dr. Johnson testified at the hearing on March 12, 2013. AR at 399-409. He did not examine Plaintiff, but based his opinions on a review of the medical records. *Id.* at 399. Dr. Johnson opined that Plaintiff suffered from depression and chronic pain disorder, and met listings 12.04 and 12.07. *Id.* at 400.

The ALJ gave Dr. Johnson's opinions no weight. *Id.* at 1213. The ALJ reasoned that the medical evidence from the period before Plaintiff's date last insured did not support Dr. Johnson's opinions; Dr. Johnson's opinions were inconsistent with Plaintiff's providers' treatment notes; Dr. Johnson's opinions were contradicted by the opinions of examining specialist Linda Miller, D.O.; and Dr. Johnson's opinions were inconsistent with the fact that Plaintiff did not seek or receive mental health treatment during the period before his date last insured. *Id.*

The ALJ did not err in rejecting Dr. Johnson's opinions. An ALJ may reject a non-examining doctor's opinions when they are inconsistent with or unsupported by the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3)-(4). As the hearing testimony revealed, Dr. Johnson's opinions were not supported by evidence from the period before Plaintiff's date last insured. *See* AR at 400-06. Moreover, Dr. Miller's examination from July 2003 revealed an unremarkable mental status exam, and Plaintiff denied having mental symptoms that would prevent him from working. *See id.* at 278-80. Plaintiff has not shown that the ALJ erred in evaluating this evidence.

Plaintiff argues that Dr. Johnson's opinions should have been accepted because they were based on his review of all of Plaintiff's medical records, and were consistent with Dr. Campbell's opinions. Pl. Op. Br. at 3-4. Plaintiff is asking for a different interpretation of the evidence, but fails to show that the ALJ's interpretation of that evidence is irrational. Plaintiff has therefore failed to show harmful error. *See Thomas*, 278 F.3d at 954.

### 2. The ALJ Did Not Harmfully Err in Rejecting Dr. Campbell's Opinions

Dr. Campbell examined Plaintiff on April 2, 2003 in connection with his workplace accident claim. *See* AR at 267-74. Dr. Campbell opined that Plaintiff had multiple trauma to his cervical spine and low back, bilateral shoulder strain, anxiety/alcoholism, and somatoform type presentation with anxiety, which complicated the physical examination. *Id.* at 272. Dr. Campbell opined that Plaintiff was "unable to work in any capacity because of [his] severe limitations," and "would be limited to only sedentary work, at best, alternating sitting and standing." *Id.* at 274.

The ALJ gave Dr. Campbell's opinions little weight. *Id.* at 1212. The ALJ reasoned that Dr. Campbell noted evidence of exaggeration, which undermined the reliability of Dr. Campbell's assessment. *Id.* The ALJ further reasoned that Dr. Campbell's opinions were inconsistent with clinical findings from Plaintiff's treatment providers. *Id.*

The ALJ did not harmfully err in rejecting Dr. Campbell's opinions. An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of an examining doctor when it is contradicted. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042).

The ALJ's first reason—that Plaintiff exaggerated his symptoms—fails. Dr. Campbell noted that Plaintiff appeared to exaggerate his symptoms. AR at 271. Dr. Campbell's report

makes clear that he considered Plaintiff's exaggeration in forming his opinions. *See id.* at 271-73. And Dr. Campbell made a number of objective findings on which he based his opinions. *See id.* at 271-72. The ALJ irrationally interpreted the evidence in finding that Dr. Campbell's opinions were unreliable due to Plaintiff's exaggeration because Dr. Campbell clearly factored that into his opinions.

The ALJ's second reason—that Dr. Campbell's opinions were inconsistent with the clinical findings of Plaintiff's treatment providers—withstands scrutiny. As the ALJ noted, Plaintiff's treating doctor found that Plaintiff had normal muscle strength in all extremities and normal reflexes shortly after the alleged onset date. *Id.* at 606, 1212. Plaintiff's treating doctors found that he had normal range of motion, gait, sensation, and reflexes during the alleged disability period. *Id.* at 590, 619, 1212. Plaintiff has failed to show that this was an irrational interpretation of the evidence, and thus the ALJ did not err in rejecting Dr. Campbell's opinions on this basis. *See Thomas*, 278 F.3d at 954.

Plaintiff has also failed to show harmful error. Although the ALJ's first reason for rejecting Dr. Campbell's opinions was erroneous, his second reason was valid. Any error was therefore harmless. *See Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162).

3. <u>The ALJ Did Not Harmfully Err in Rejecting Dr. Brewer's Opinions</u>

Dr. Brewer—one of Plaintiff's treatment providers—issued three opinions. *See* AR at 629-32. In late 2003, Dr. Brewer opined that Plaintiff could not return to his prior job, but was able to return to light duty work. *Id.* at 632. Dr. Brewer opined that Plaintiff could sit, stand, and walk for four hours in an eight-hour work day, and lift and carry up to five pounds frequently and six to ten pounds seldomly. *Id.* at 631. Dr. Brewer opined that Plaintiff could seldom bend, squat, kneel, crawl, climb, or reach above shoulder level, and should avoid

unprotected heights, being around moving machinery, and being exposure to marked changes in temperature and humidity. *Id.* Dr. Brewer opined that these restrictions were temporary, and expected them to last six months. *Id.* at 632.

On January 31, 2004, Dr. Brewer opined that Plaintiff could not perform his prior job of heavy equipment operator. *Id.* at 629. Dr. Brewer opined that Plaintiff could not lift more than 20 pounds, and "should work at a sedentary/light job." *Id.*

The ALJ gave Dr. Brewer's opinions little weight. *Id.* at 1212. The ALJ reasoned that Dr. Brewer's 2003 opinions did "not give a reliable longitudinal opinion regarding the claimant's functioning," and were inconsistent with Dr. Brewer's unremarkable physical exams. *Id.* The ALJ reasoned that the 2003 and 2004 opinions were inconsistent with the clinical findings of Plaintiff's treatment providers, and "used undefined terms" of light and sedentary work. *Id.*

Plaintiff has failed to show that the ALJ committed harmful error in weighing Dr. Brewer's opinions. *See Molina*, 674 F.3d at 1111. Plaintiff devotes one sentence of his opening brief to suggesting that the ALJ erred, noting that "Dr. Brewer was able to base her opinion on her observation that [Plaintiff] 'walked stiffly,' and her review of [Plaintiff's] x-rays and his 'orthopedic workup.'" Pl. Op. Br. at 7 (quoting AR at 632, 637). Plaintiff merely reiterates this argument on reply. Pl. Reply Br. (Dkt. 19) at 4. This is an alternative explanation for how the ALJ could have weighed Dr. Brewer's opinions. But it is not an adequately developed argument to establish error. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that the court will "review only issues which are argued specifically and distinctly in a party's opening brief. . . . [A] bare assertion of an issue does not preserve a claim") (internal citations and quotation marks omitted); *see also Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018).

ORDER AFFIRMING DENIAL OF BENEFITS
- 12

Furthermore, the ALJ reasonably found that—like Dr. Campbell's opinions—Dr. Brewer's opinions were inconsistent with the clinical findings of her treatment providers. *See supra* Part II.B.2. This reason, standing alone, supports the ALJ's determination, and therefore the ALJ did not harmfully err rejecting Dr. Brewer's opinions. *See Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162).

4. <u>The ALJ Did Not Harmfully Err in Evaluating Dr. Daniel's Opinions</u>

Dr. Daniel was one of Plaintiff's treating doctors. *See* AR at 593-94. In November 2002, Dr. Daniel opined that Plaintiff had not reached maximum medical improvement, but could return to work in a modified form. *Id.* at 593. Dr. Daniel opined that Plaintiff could lift and carry 11 to 20 pounds frequently; frequently squat and kneel; and occasionally bend, crawl, and climb. *Id.* at 594. Dr. Daniel opined that Plaintiff should avoid unprotected heights. *Id.*

The ALJ gave Dr. Daniel's opinions "some weight." *Id.* at 1212. He determined that Dr. Daniel's opinions were "somewhat consistent with the medical evidence during the relevant period." *Id.*

Plaintiff has failed to show that the ALJ committed harmful error. *See Molina*, 674 F.3d at 1111. Plaintiff points to other evidence in the record, but fails to explain what error the ALJ committed with respect to Dr. Daniel's opinions. The RFC accounts for Dr. Daniel's opined limitations. *See id.* at 594, 1206. To the extent Plaintiff is arguing that the ALJ erred in accepting Dr. Daniel's opinions, the ALJ is not required to provide reasons in support of incorporating a medical opinion into the RFC determination. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) ("the ALJ did not need to provide 'clear and convincing reasons' for rejecting [a treating doctor's] report because the ALJ did not reject any of [his] conclusions"). The ALJ thus did not harmfully err in evaluating Dr. Daniel's opinions.

5. <u>The ALJ Did Not Err in Evaluating the Opinions of Dr. Hoskins, Dr. Collingwood, Dr. Robinson, and Dr. Akins</u>

Dr. Hoskins, Dr. Collingwood, Dr. Robinson, and Dr. Akins were all non-examining doctors. *See* AR at 289-302, 346-47. Dr. Hoskins issued a one-page opinion agreeing with the assessment of physical consultant Kassia Randall. *See id.* at 281-88, 347. Dr. Collingwood evaluated Plaintiff's mental health and determined that he did not have a medically determinable impairment other than alcohol abuse. *Id.* at 289, 297, 301. Dr. Robinson issued an opinion affirming Dr. Collingwood's evaluation. *Id.* at 346. Dr. Akins similarly found that there was insufficient information in the record to determine the severity of any work-related limitations due to anxiety or alcohol abuse between Plaintiff's alleged disability onset date and his date last insured. *Id.* at 1800-01.

The ALJ gave the opinions of Dr. Hoskins, Dr. Collingwood, and Dr. Robinson some weight, while he gave the opinions of Dr. Akins great weight. *Id.* at 1213. Plaintiff has not shown that the ALJ erred in doing so. An ALJ is not required to provide reasons in support of incorporating a medical opinion into the residual functional capacity determination. *See Turner*, 613 F.3d at 1223. Plaintiff merely argues that the ALJ should have weighed the evidence differently, which is not a sufficient basis for this Court to reverse. *See Thomas*, 278 F.3d at 954. Plaintiff has consequently failed to show harmful error.

6. <u>The ALJ Did Not Harmfully Err in Rejecting the Opinions of Dr. Albert and Dr. Yamamoto</u>

Plaintiff argues that the ALJ erred in failing to discuss the medical evidence beyond 2003. Pl. Op. Br. at 7-8. Plaintiff's only specific argument here is that the ALJ failed to address the medical evidence from Dr. Albert and Dr. Yamamoto. *See id.* Because Plaintiff has failed to provide any specificity with respect to any of the other medical evidence after 2003, the Court

ORDER AFFIRMING DENIAL OF BENEFITS
- 14

will limit its analysis to the ALJ's treatment of records from Dr. Albert and Dr. Yamamoto. *See Carmickle*, 533 F.3d at 1161 n.2 (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

Dr. Albert treated Plaintiff in 2008 and 2009. *See* AR at 303-16, 925-65. The record includes Dr. Albert's treatment notes, but does not include a specific opinion from him regarding Plaintiff's functional and work-related abilities. *See id.* Dr. Yamamoto performed surgery on Plaintiff's neck in November 2010. *Id.* at 1158-59. As with Dr. Albert, the record includes Dr. Yamamoto's treatment notes, but does not include a specific opinion from him regarding Plaintiff's functional and work-related abilities. *See id.* at 1146-97.

The ALJ gave these opinions "little weight because they do not describe the claimant's functioning during the period at issue. Furthermore, the medical evidence during the relevant period supports the limitations set forth in the . . . [RFC]." *Id.* at 1213.

Plaintiff has once again failed to show harmful error. The ALJ reasonably determined that records from Dr. Albert and Dr. Yamamoto that were based on treatment five to seven years after Plaintiff's date last insured did not reliably reflect Plaintiff's condition prior to the date last insured. *See Bodnarchuk v. Barnhart*, 70 F. App'x 411, 413 (9th Cir. 2003) (affirming ALJ's rejection of treating physician's opinion when it was rendered nearly twenty years after the claimant's insured status expired). Moreover, the ALJ was only required to "explain why 'significant probative evidence has been rejected.'" *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Plaintiff has failed to show that evidence from 2008 to 2011 was probative of whether he was disabled in 2003. Plaintiff has consequently failed to show harmful error.

In sum, although the ALJ's analysis of the medical evidence was not free from error, Plaintiff has failed to show that any of the ALJ's errors were harmful.

**C.     The ALJ Did Not Harmfully Err in Evaluating the Lay Witness Testimony**

Plaintiff argues that the ALJ erred in rejecting the lay witness testimony. Pl. Op. Br. at 15-16. Plaintiff's brother testified at the hearing in 2010 and submitted a written statement. AR at 79-85, 584. Plaintiff's mother and one of Plaintiff's friends submitted written statements. *Id.* at 582-83. Plaintiff referenced these last two statements in his opening brief, but did not make any specific argument that the ALJ erred in considering them. *See* Pl. Op. Br. at 15-16. The Court therefore does not address whether the ALJ erred in considering the statements from Plaintiff's mother and friend. *See Carmickle*, 533 F.3d at 1161 n.2 (citing *Paladin Assocs.*, 328 F.3d at 1164).

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Plaintiff's brother testified at the hearing on March 17, 2010. AR at 79-85. He testified that Plaintiff was always in pain, had trouble sleeping, and had trouble keeping focused. *Id.* at 80. Plaintiff's brother testified that Plaintiff no longer hunted or fished, and socialized less than he did before his workplace accident. *Id.* at 84.

Plaintiff's brother also submitted a written statement dated November 2, 2012. *Id.* at 584. Plaintiff's brother stated that Plaintiff "has no desire to do anything because he physically isn't

able to" and that the two barely speak anymore. *Id.*

The ALJ rejected Plaintiff's brother's testimony and written statement for several reasons. *Id.* at 1214. First, Plaintiff's brother's testimony that Plaintiff was unable to do things because of depression was inconsistent with Plaintiff's testimony at the hearing in 2010. *Id.* Second, Plaintiff's "brother's testimony about pain limiting [Plaintiff was] somewhat inconsistent with the observations by and opinions of treating [doctors] Daniel and Carpenter." *Id.* Third, Plaintiff's brother's written statement from 2012 reflected Plaintiff's situation at that time, "not during [the] insured period." *Id.* at 1214.[2]

The ALJ's first reason withstands scrutiny. A conflict between Plaintiff's testimony and that of his brother is a germane reason to reject Plaintiff's brother's testimony. *See Lindquist v. Colvin*, 588 F. App'x 544, 547 (9th Cir. 2014). Plaintiff testified that he was not depressed, contradicting his brother's statement that Plaintiff could not do things because of depression. *See* AR at 65.

The ALJ's second reason is too vague to withstand scrutiny. Although contradiction with the medical evidence is a germane reason to reject lay witness testimony, the ALJ must identify the contradictions on which he relies. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding . . . and comb the administrative record to find specific conflicts."). The ALJ did not identify any specific inconsistencies, nor are any readily apparent. *See id.* at 1214.

---

[2] The ALJ also included a discussion that even if Plaintiff were more limited, the *Dictionary of Occupational Titles* contained jobs that Plaintiff could still perform. *Id.* at 1214. The Court does not address this discussion because the ALJ gave other reasons that are sufficient to justify discounting Plaintiff's brother's testimony.

ORDER AFFIRMING DENIAL OF BENEFITS
- 17

The ALJ's third reason withstands scrutiny. The ALJ reasonably interpreted the evidence in finding that Plaintiff's brother's written statement from 2012 did not reflect Plaintiff's situation prior to the date last insured in 2003. *See id.*

Although the ALJ's evaluation of Plaintiff's brother's testimony and statement was not without error, Plaintiff has failed to show harmful error. The ALJ included valid reasons for rejecting Plaintiff's brother's testimony, and those reasons remain valid despite the ALJ's error. Therefore, the ALJ's error was harmless. *See Molina*, 674 F.3d at 1115.

**D.     The ALJ Did Not Err in Assessing Plaintiff's RFC and Conducting the Step Five Evaluation**

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC, and consequently erred at step five of the disability evaluation process. Pl. Op. Br. at 16-17. This argument is derivative of Plaintiff's other arguments, as it is based on the contention that the ALJ failed to properly evaluate Plaintiff's symptom testimony, the medical evidence, and the lay witness testimony. *See id.* Because the Court has found that the ALJ did not err in his assessment of Plaintiff's testimony, the medical evidence, and the lay witness testimony, Plaintiff's argument fails. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

### III.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 9th day of April, 2019.

Ronald B. Leighton
United States District Judge

ORDER AFFIRMING DENIAL OF BENEFITS
- 18